IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

FILED
IN OPEN COURT

AUG - 7 2014

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO.   1:14CR206 |
| | ) | |
| ITZHAK LOZ | ) | <u>Count One</u> |
| (a/k/a Ari, a/k/a Avi) | ) | Racketeering Conspiracy |
| (Counts1-2), | ) | 18 U.S.C. § 1962(d) |
| | ) | |
| RONEN FAKIRO | ) | <u>Count Two</u> |
| (Counts 1-2), | ) | Conspiracy |
| | ) | 18 U.S.C. § 371,471, 472, 473, 474 |
| BOAZ BOROHOV | ) | |
| (Counts 1-2), | ) | <u>Forfeiture</u> |
| | ) | 18 U.S.C. § 1963 |
| OFRA BOROHOV | ) | 18 U.S.C. § 981(a)(1)(C) |
| (Counts 1-2), | ) | 28 U.S.C. § 2461(c) |
| | ) | 18 U.S.C. § 492 |
| ARKADIY BANGIYEV | ) | FRCP 32.2(a) |
| (a/k/a Alex) | ) | |
| (Counts 1-2), | ) | Judge O'Grady |
| | ) | |
| EDUARD BANGIYEV | ) | |
| (a/k/a Eddie) | ) | |
| (Counts 1-2), | ) | |
| | ) | |
| JOHNNY ELEGANTE LEE | ) | |
| (a/k/a Ramel, a/k/a Ra, a/k/a Jason Carter) | ) | |
| (Counts 1-2), | ) | |
| | ) | |
| TARELL LAVON JOHNSON | ) | |
| (a/k/a Nu Nu, a/k/a Nu) | ) | |
| (Counts 1-2) | ) | |
| | ) | |
| CRAIG JOHNSON, | ) | |
| (a/k/a Uncle Bill) | ) | |
| (Counts 1-2) | ) | |
| | ) | |
| SHANNON LAMONT SMITH, | ) | |
| (Counts 1-2) | ) | |
| | ) | |

FREDERICK BARRETT,                    )
    (Count 2)                         )
                                      )
RAMEL EPPS,                           )
    (Count 2)                         )
                                      )
BRATTIE GUERRA,                       )
    (Count 2)                         )
                                      )
    Defendants.                       )

## AUGUST 2014 TERM – AT ALEXANDRIA

## SUPERSEDING INDICTMENT

### General Allegations

THE GRAND JURY CHARGES THAT:

### Introduction

At all times relevant to this Indictment:

1.      The United States Department of the Treasury, through the Bureau of Engraving and Printing (BEP), develops and produces United States Currency notes, which are trusted worldwide. As its primary function, the BEP oversees the production of billions of dollars, referred to as Federal Reserve Notes (FRN). The production of FRN is not a simple or easy task and involves highly-trained and skilled craftspeople, specialized equipment and a combination of traditional, old-world printing techniques merged with sophisticated, cutting-edge technology. Overall, there are numerous, distinctive steps required in the production process and the design, paper and ink used in the production of FRN are distinct. The FRN also have various security features as a means to protect against counterfeiting.

2.      Genuine FRN are circulated through the Federal Reserve, which operates as the nation's central bank and serves to ensure that adequate amounts of currency are in circulation.

On or about October 8, 2013, the BEP issued a re-designed $100 FRN which contained new and additional security features, including a watermark portrait of Benjamin Franklin, a 3-D blue security thread, an image of a liberty bell in the inkwell, color shifting "100," raised printing, gold ink "100" and microprinting. Subtle background colors were added to the redesigned notes to make them more secure and difficult to counterfeit.

3.     The United States Secret Service was created in 1865 with the sole mission of suppressing counterfeiting of the Nation's currency.     In 2005, the United States Secret Service first detected a high quality $100 FRN in New York that was produced through the use of off-set printing.     This note was identified as Circular-23332 (C-23332).     The United States Secret Service estimates that from 2005 until the present, approximately $32 million of C-23332 was passed or seized in the United States.

The Enterprise

4.     At all times relevant to the Superseding Indictment, defendants ITZHAK LOZ (a/k/a Avi, a/k/a Ari), RONEN FAKIRO, BOAZ BOROHOV, OFRA BOROHOV, ARKADIY BANGIYEV (a/k/a Alex), EDUARD BANGIYEV (a/k/a Eddie), JOHNNY ELEGANTE LEE (a/k/a Ramel, a/k/a Ra, a/k/a Jason Carter), TARELL LAVON JOHNSON (a/k/a Nu Nu, a/k/a Nu), CRAIG JOHNSON (a/k/a Uncle Bill), and SHANNON LAMONT SMITH, together with other persons known and unknown to the grand jury, were members and associates of a criminal organization, which was engaged in, among other things, the counterfeiting of United States (U.S.) currency, money structuring, and other crimes in the Eastern District of Virginia and elsewhere.

5.     This criminal organization, including its leadership, membership and associates, constituted an "enterprise," as defined by Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact.     The enterprise constituted an ongoing organization whose

3

members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. This enterprise was engaged in, and its activities affected interstate and foreign commerce.

Purposes of the Enterprise

6.      The purposes of the enterprise included enriching its members and associates through, among other things, the manufacturing, production, dealing and uttering of counterfeit $100 Federal Reserve Notes (FRN) (counterfeit U.S. currency) and evading the reporting requirements for domestic financial institutions for currency transactions of $10,000 or more by structuring cash deposits.

Means and Methods of the Enterprise

7.      Among the ways, manner and means by which the defendants and the co-conspirators accomplished the objects of the conspiracy included the following:

a.      It was part of the conspiracy that the co-conspirators traveled from the Eastern District of Virginia to New York with genuine U.S. currency to obtain counterfeit $100 FRN.

b.      It was further part of the conspiracy that the co-conspirators traveled from Georgia to the Eastern District of Virginia to obtain counterfeit $100 FRN.

c.      It was further part of the conspiracy that the co-conspirators traveled in interstate and foreign commerce to manufacture, produce, sell, obtain and utter $100 FRN in exchange for genuine U.S. currency.

d.      It was further part of the conspiracy that the co-conspirators obtained the counterfeit $100 FRN with genuine U.S. currency and that the counterfeit FRN were sold at a

4

percentage of the face value of the genuine U.S. currency, in amounts ranging from 20% to 50% on the dollar.

e.      It was further part of the conspiracy that the co-conspirators communicated with one another via cellphone, text messages and in person.

f.      It was further part of the conspiracy that the co-conspirators used code words and phrases to refer to counterfeit U.S. currency.

g.      It was further part of the conspiracy that the co-conspirators brought counterfeit U.S. currency into the United States and possessed and concealed counterfeit U.S. currency.

h.      It was further part of the conspiracy that the co-conspirators structured cash deposits of genuine U.S. currency, in amounts under $10,000, at domestic financial institutions to avoid currency reporting requirements and to facilitate the purchase of counterfeit U.S. currency.

i.      It was further part of the conspiracy that the co-conspirators withdrew genuine U.S. currency at domestic financial institutions in the Eastern District of Virginia to obtain counterfeit $100 FRN.

j.      It was further part of the conspiracy that the co-conspirators used "Federal Express" and other means to transport genuine U.S. currency and counterfeit U.S. currency to one another.

k.      It was further part of the conspiracy that the co-conspirators passed and uttered counterfeit U.S. currency at various retail stores along the eastern part of the United States, including stores in the Eastern District of Virginia.

## Roles of the Defendants

8.    The following defendants were members and associates of the criminal enterprise and participated in the operation and management of the enterprise in the following manner, among others.

a.    ITZHAK LOZ (a/k/a Ari, a/k/a Avi) was a leader of the enterprise who dealt in and manufactured counterfeit $100 FRN.   LOZ directed and guided other members and associates of the enterprise in carrying out certain unlawful and other activities in furtherance of the conduct of the affairs of the enterprises.   LOZ was personally involved in the counterfeiting of U.S. currency and money structuring.   LOZ solicited the collection of cash proceeds generated by the enterprise and purchased a warehouse in New Jersey, along with printing presses and other equipment and supplies for the purpose of manufacturing counterfeit U.S. currency;

b.    RONEN FAKIRO was a leader of the enterprise who traveled from Israel to the United States to assist LOZ in setting up an industrial warehouse in the United States to manufacture and print counterfeit $100 FRN.   FAKIRO assisted in the production and manufacture of counterfeit U.S. currency.   FAKIRO opened bank accounts in the United States with LOZ into which he structured cash deposits of genuine U.S. currency under $10,000. FAKIRO also conducted domestic financial transactions to promote and facilitate the counterfeiting activities of the enterprise.   FAKIRO recruited other members and associates of the enterprise in carrying out certain unlawful and other activities in furtherance of the conduct of the affairs of the enterprise;

c.    BOAZ BOROHOV was a member of the enterprise who was involved in the manufacture and production of counterfeit $100 FRN and acted under the direction of RONEN FAKIRO and ITZHAK LOZ;

6

d.    OFRA BOROHOV was a member of the enterprise who was involved in the manufacture and production of counterfeit $100 FRN and acted under the direction of RONEN FAKIRO and ITZHAK LOZ.

e.    ARKADIY BANGIYEV (a/k/a Alex) was a member of the enterprise who obtained counterfeit $100 FRN from LOZ for sale to others and who coordinated the movement of money derived from the sale of counterfeit U.S. currency.  ARKADIY BANGIYEV and his brother, EDUARD BANGIYEV, also invested genuine U.S. currency with LOZ to facilitate the production and printing of counterfeit U.S. currency;

f.    EDUARD BANGIYEV (a/k/a Eddie), the brother of ARKADIY BANGIYEV, was a member of the enterprise who obtained counterfeit $100 FRN for sale to others and who, along with his brother, ARKADIY BANGIYEV, coordinated the collection of money derived from the sale of counterfeit U.S. currency.  EDUARD BANGIYEV and his brother invested genuine U.S. currency with LOZ to facilitate the production and printing of counterfeit U.S. currency;

g.    JOHNNY ELEGANTE LEE (a/k/a Ramel, a/k/a Ra, a/k/a Jason Carter) was a member of the enterprise who obtained counterfeit $100 FRN from EDUARD BANGIYEV for sale to others.   Lee also uttered counterfeit $100 FRN;

h.    TARELL LAVON JOHNSON (a/k/a Nu Nu, a/k/a Nu) was a member of the enterprise who obtained counterfeit $100 FRN from JOHNNY ELEGANTE LEE and EDUARD BANGIYEV for sale to others;

i.    CRAIG JOHNSON (a/k/a Uncle Bill) was a member of the enterprise who obtained counterfeit $100 FRN supplied by his nephew, TARELL LAVON JOHNSON, for sale to others in Georgia.  CRAIG JOHNSON also structured cash deposits of genuine U.S. currency to

facilitate the purchase of counterfeit $100 FRN. CRAIG JOHNSON also directed and guided other members and associates of the enterprise in carrying out certain unlawful and other activities in furtherance of the conduct of the affairs of the enterprise; and

j. SHANNON LAMONT SMITH was a member of the enterprise who obtained counterfeit $100 FRN from CRAIG JOHNSON in Georgia and uttered it at various retail stores in Georgia, South Carolina, North Carolina, Virginia and Tennessee.

## COUNT ONE

(Racketeering Influenced and Corrupt Organizations (RICO) Conspiracy)

### The Racketeering Conspiracy

9. The Grand Jury incorporates by reference paragraphs 1 through 8 of the general allegations as if fully re-stated and re-alleged herein.

From in and around 2004, and continuing until on or about June 1, 2014, in the Eastern District of Virginia and elsewhere, the defendants ITZHAK LOZ (a/k/a Ari, a/k/a Avi), RONEN FAKIRO, BOAZ BOROHOV, OFRA BOROHOV, ARKADIY BANGIYEV (a/k/a Alex), EDUARD BANGIYEV (a/k/a Eddie), JOHNNY ELEGANTE LEE (a/k/a Ramel, a/k/a Ra, a/k/a Jason Carter), TARELL LAVON JOHNSON (a/k/a Nu Nu, a/k/a Nu), CRAIG JOHNSON (a/k/a Uncle Bill) and SHANNON LAMONT SMITH, together and with other persons known and unknown, being persons employed by and associated with an enterprise which engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conspired to violate 18 U.S.C. § 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise, through a pattern of racketeering activity, as that term is defined in Sections 1961(1) and 1961(5) of Title 18, United States Code, consisting of multiple acts indictable under the following:

(a)     18 U.S.C. § 471 (relating to counterfeiting);

(b)     18 U.S.C. § 472 (relating to counterfeiting);

(c)     18 U.S.C. § 473 (relating to counterfeiting);

(d)     31 U.S.C. § 5324 (any act which is indictable under the Currency and Foreign Transactions Reporting Act);

It was further part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise.

Overt Acts

In furtherance of the conspiracy and to effect the objects and purposes thereof, the defendants and their co-conspirators, known and unknown to the grand jury, committed and caused to be committed various overt acts in the Eastern District of Virginia and elsewhere, including but not limited to the following:

1.     On or about March 17, 2012, in Woodbridge, Virginia, within the Eastern District of Virginia, an unindicted co-conspirator (UCC-1) uttered four (4) counterfeit $100 FRN at Loan Max.

2.     On or about May 15, 2012, in Woodbridge, Virginia, UCC-1 uttered four (4) counterfeit $100 FRN at Loan Max.

3.     On or about June 9, 2012, in Stafford, Virginia, within the Eastern District of Virginia, UCC-1 and a second unindicted co-conspirator (UCC-2) each uttered one (1) counterfeit $100 FRN in two separate transactions at Wal-Mart, for a total of $200.

4.     On or about July 21, 2012, in Woodbridge, Virginia, UCC-2 uttered one (1) counterfeit $100 FRN at Sam's Club.

5.     On or about July 28, 2012, in Stafford, Virginia, UCC-1 and UCC-2 each uttered

one (1) counterfeit $100 FRN, in two separate transactions, for a total of $200.

6. On or about December 27, 2012, in Lithia Springs, Georgia, CRAIG JOHNSON deposited $4,500 in genuine U.S. currency into a joint BB&T checking account ending in 0984 belonging to UCC-1 and UCC-2.

7. On or about December 28, 2012, in Lithia Springs, Georgia, CRAIG JOHNSON deposited $4,500 in genuine U.S. currency into a joint BB&T checking account ending in 0984 belonging to UCC-1 and UCC-2.

8. On or about January 2, 2013, in Lithia Springs, Georgia, CRAIG JOHNSON deposited $4,500 in genuine U.S. currency into a joint BB&T checking account ending in 0984 belonging to UCC-1 and UCC-2.

9. On or about January 3, 2013, in Woodstock, Georgia, CRAIG JOHNSON deposited $4,500 in genuine U.S. currency into a joint BB&T checking account ending in 0984 belonging to UCC-1 and UCC-2.

10. On or about January 26, 2013, in Frederick, Maryland, UCC-1 and UCC-2 both uttered two (2) counterfeit $100 FRN in two separate transactions at Wal-Mart, for a total of $400.

11. On or about January 27, 2013, in Stafford, Virginia, UCC-1 uttered one (1) counterfeit $100 FRN, in two separate transactions, at Wal-Mart for a total of $200 and UCC-2 attempted to utter one (1) counterfeit $100 FRN.

12. On or about May 20, 2013, in Freeport, New York, TARELL LAVON JOHNSON sold one hundred (100) counterfeit $100 FRN to UCC-1 in exchange for $4,300 in undercover funds.

13. On or about September 2, 2013, in Forest Hills, New York, EDUARD

BANGIYEV transferred a quantity of counterfeit U.S. currency to JOHNNY ELEGANTE LEE and TARELL LAVON JOHNSON for sale to others.

14.     On or about September 5, 2013, in Freeport, New York, TARELL LAVON JOHNSON sold one hundred (100) counterfeit $100 FRN to UCC-1 in exchange for $4,200 in undercover funds.

15.     On or about September 5, 2013, in Glen Oaks, New York, TARELL LAVON JOHNSON delivered cash proceeds to JOHNNY ELEGANTE LEE from the sale of $10,000 in counterfeit U.S. currency to UCC-1.

16.     On or about September 10, 2013, TARELL LAVON JOHNSON and CRAIG JOHNSON discussed obtaining counterfeit U.S. currency over the telephone.

17.     On or about October 27, 2013, in Nashville, Tennessee, JOHNNY ELEGANTE LEE uttered four (4) counterfeit $100 FRN at Toys R Us.

18.     On or about November 21, 2013, ARKADIY BANGIYEV telephoned EDUARD BANGIYEV and directed him to give $100,000 in genuine U.S. currency to a courier coming to A.K. 47th Street Buyers in New York.

19.     On or about November 21, 2013, ARKADIY BANGIYEV spoke with ITZHAK LOZ to discuss the delivery of $100,000 in genuine U.S. currency to a courier.

20.     On or about November 21, 2013, in New York, New York, EDUARD BANGIYEV gave $100,000 in genuine U.S. currency to a courier at A.K. 47th Street Buyers, at the direction of ARKADIY BANGIYEV, and on behalf of ITZHAK LOZ.

21.     On or about December 10, 2013, in Rego Park, New York, ARKADIY

BANGIYEV and EDUARD BANGIYEV transferred $100,000 in genuine U.S. currency to ITZHAK LOZ.

22.     On or about December 14, 2013, ITZHAK LOZ and ARKADIY BANGIYEV spoke on the telephone to discuss the collection of $200,000 in genuine U.S. currency.

23.     On or about January 2, 2014, in Woodstock, Georgia, SHANNON LAMONT SMITH uttered one (1) counterfeit $100 FRN at a McDonald's restaurant.

24.     On or about January 3, 2014, ITZHAK LOZ and RONEN FAKIRO purchased industrial warehouse unit #18 at 620 Deer Road in Cherry Hill, New Jersey for approximately $147,683.64.

25.     On or about January 12, 2014, ITZHAK LOZ telephoned ARKADIY BANGIYEV to confirm his travel to the United States and the collection of $100,000 or more in genuine U.S. currency.

26.     On or about January 14, 2014, ITZHAK LOZ and RONEN FAKIRO departed Israel and flew into LaGuardia International Airport in New York from Canada.

27.     On or about January 15, 2014, in Forest Hills, New York, ITZHAK LOZ picked up a quantity of counterfeit and genuine U.S. currency from the residence of EDUARD BANGIYEV.

28.     On or about January 24, 2014, in Cherry Hill, New Jersey, ITZHAK LOZ and RONEN FAKIRO opened a joint personal checking account at Bank of America ending in 8776.

29.     On or about January 24, 2014, in Cherry Hill, New Jersey, RONEN FAKIRO opened a personal checking account at Bank of America ending in 8938.

30.     On or about January 24, 2014, in Cherry, Hill, New Jersey, ITZHAK LOZ deposited $9,500 into his Bank of America account ending in 3201 at approximately at 10:42 a.m.

31.     On or about January 24, 2014, in Cherry, Hill, New Jersey, ITZHAK LOZ deposited $9,000 into his joint Bank of America personal checking account ending in 8776 at approximately at 12:12 p.m.

32.     On or about January 24, 2014, in Cherry, Hill, New Jersey, RONEN FAKIRO deposited $5,200 into his own Bank of America personal checking account ending in 8938.

33.     On or about January 24, 2014, in Cherry, Hill, New Jersey, RONEN FAKIRO, accompanied by ITZHAK LOZ, deposited $4,300 into FAKIRO's Bank of America personal checking account ending in 8938 within minutes of the deposit of $5,200 deposit on that same date.

34.     On or about January 28, 2014, in Buffalo, New York, ITZHAK LOZ and RONEN FAKIRO imported an off-set printing press from Canada.

35.     On or about February 7, 2014, in Nashville, Tennessee, JOHNNY ELEGANTE LEE uttered four (4) counterfeit $100 FRN and a female unindicted co-conspirator (UCC-3) uttered one (1) counterfeit $100 FRN at various retail locations, including but not limited to Ruby Tuesday, the Gap, Fresh Market and Babies R Us.

36.     On or about February 10, 2014, in Canton, Georgia, SHANNON LAMONT SMITH uttered one (1) counterfeit $100 FRN at Lowe's.

37.     On or about February 15, 2014, ARKADIY BANGIYEV, ITZHAK LOZ, JOHNNY LEE and EDUARD BANGIYEV discussed counterfeit U.S. currency bearing the number "77" during a series of telephone conversations.

38.     On or about February 17, 2014, in Woodstock, Georgia, SHANNON LAMONT SMITH uttered one (1) counterfeit $100 FRN at Express Car Wash.

39.     On or about February 18, 2014, in New York, New York, ITZHAK LOZ and

13

EDUARD BANGIYEV deposited, and caused to be deposited, $9,500 in U.S. currency into LOZ's Bank of America personal checking account ending in 3201.

40.    On or about February 25, 2014, in Cherry Hill, New Jersey, ITZHAK LOZ and RONEN FAKIRO accepted delivery of a shipping container, imported from Israel into New York, containing multiple off-set printing presses, hand tools and other items at 620 Deer Road, Unit #18.

41.    On or about March 19, 2014, in Cherry Hill, New Jersey, ITZHAK LOZ and RONEN FAKIRO created and reproduced images of the Liberty Bell and "100" found on the blue security ribbon, a security and design feature of the re-designed $100 FRN issued by the BEP on October 8, 2013.

42.    On or about March 26, 2014, in Philadelphia, Pennsylvania, BOAZ BOROHOV and OFRA BOROHOV entered the United States at the Philadelphia International Airport after leaving Israel for the purpose of counterfeiting U.S. currency.

43.    On or about April 2, 2014, in Cherry Hill, New Jersey, ITZHAK LOZ and RONEN FAKIRO created and reproduced multiple images of a watermark of a portrait of Benjamin Franklin found on the new and re-designed $100 FRN note issued on October 8, 2013.

44.    On or about April 9, 2014, in Cherry Hill, New Jersey, ITZHAK LOZ and RONEN FAKIRO created and reproduced three security features of the new and re-designed $100 FRN note, including the watermark of a portrait of Benjamin Franklin, the blue security ribbon and security thread.

45.    On or about April 23, 2014, ITZHAK LOZ drove from Cherry Hill, New Jersey to New York to meet with ARKADIY BANGIYEV and EDUARD BANGIYEV.

46.    On or about April 23, 2014, in Cherry Hill, New Jersey, ITZHAK LOZ deposited

$2,500 into his Bank of America personal checking account ending in 3201.

47.     On or about April 23, 2014, in Cherry Hill, New Jersey, RONEN FAKIRO deposited $4,900 into a Bank of America personal checking account ending in 8776 held jointly with LOZ.

48.     On or about April 24, 2014, in Cherry Hill, New Jersey, RONEN FAKIRO deposited $5,000 into a Bank of America personal checking account ending in 8776 held jointly with LOZ.

49.     On or about May 21, 2014, in Cherry Hill, New Jersey, ITZHAK LOZ, RONEN FAKIRO, BOAZ BOROHOV and OFRA BOROHOV created and reproduced three front plate images of the older $100 FRN bearing the portrait of Benjamin Franklin, the Federal Reserve Seal, "100," and quadrant numbers and letters, as well as the words "The United States of America," and other identifying features found on genuine U.S. currency.

50.     On or about May 28, 2014, in Rockville Centre, New York, ITZHAK LOZ and RONEN FAKIRO possessed and concealed approximately $2.5 million worth of counterfeit U.S. currency in a Self-Storage facility leased by ITZHAK LOZ.

51.     On or about May 28, 2014, in Cherry Hill, New Jersey, ITZHAK LOZ, RONEN FAKIRO, BOAZ BOROHOV and OFRA BOROHOV possessed uncut sheets of three counterfeit $100 FRN (C-23332); approximately 20 printing plates bearing the U.S. Treasury seal, serial numbers and "100" in color shifting ink; boxes of shredded material bearing "100" in color shifting ink; cut and uncut security ribbon simulation; one Heidelberg off-set printing press; one Ryobi off-set printing press; three Heidelberg printing machines; a projector plate magnesium etching machine; two heat presses; an industrial shredder and paper cutter; inks, solvents, foil and other items used in the off-set printing process.

52.     On or about May 28, 2014, in Jamaica, New York, ITZHAK LOZ and RONEN FAKIRO jointly possessed approximately $95,361.17 in genuine U.S. currency in their respective hotel rooms.

53.     On or about May 28, 2014, in New York, TARELL LAVON JOHNSON possessed approximately $12,020 in genuine U.S. currency and a Smith and Wesson .45 caliber handgun, Model 1911, serial number JRJ8146.

54.     On or about June 1, 2014, in Ft. Lauderdale, Florida, JOHNNY ELEGANTE LEE possessed approximately seven (7) counterfeit $100 FRN and $900 in genuine U.S. currency as he entered the United States.

(All in violation of Title 18, United States Code, Section 1962(d)).

## COUNT TWO

Paragraphs 1 through 3 of this Indictment and Overt Acts 1 through 54 of Count 1 of this Indictment are hereby re-alleged and re-incorporated by reference as if fully set forth herein.

From in or about October of 2011, and continuing until on or about June 1, 2014, in the Eastern District of Virginia and elsewhere, defendants ITZHAK LOZ (a/k/a Ari, a/k/a Avi), RONEN FAKIRO, BOAZ BOROHOV, OFRA BOROHOV, ARKADIY BANGIYEV (a/k/a Alex), EDUARD BANGIYEV (a/k/a Eddie), JOHNNY ELEGANTE LEE (a/k/a Ramel, a/k/a Ra, a/k/a Jason Carter), TARELL LAVON JOHNSON (a/k/a Nu Nu, a/k/a Nu), CRAIG JOHNSON (a/k/a Uncle Bill), SHANNON LAMONT SMITH, FREDERICK BARRETT, RAMEL EPPS and BRATTIE GUERRA and others, both known and unknown to the grand jury, did unlawfully and knowingly combine, conspire, confederate and agree to commit the following offenses against the United States:

(a)     to falsely make, forge and counterfeit, with intent to defraud, falsely made, forged and counterfeited obligations of the United States, that is, $100 FRN (C-23332), in violation of Title 18, United States Code, Section 471;

(b)     to pass, utter, publish and sell, with intent to defraud, falsely made, forged and counterfeited obligations of the United States, that is, $100 FRN (C-23332), which the defendant(s) then knew to be falsely made, forged and counterfeited, in violation of Title 18, United States Code, Section 472;

(c)     to bring into the United States, and keep in possession, and conceal, with intent to defraud, falsely made, forged and counterfeited obligations of the United States, that is, $100 FRN (C-23332), which the defendant(s) then knew to be falsely made, forged and counterfeited, in violation of Title 18, United States Code, Section 472;

17

(d)     to buy, sell, exchange, transfer, receive, and deliver false, forged and counterfeited obligations of the United States, that is, $100 FRN (C-23332), with the intent that the same be passed, published and used as true and genuine, in violation of Title 18, United States Code, Section 473;

(e)     to make, execute, acquire, scan, capture, record, receive, transmit, reproduce and sell, with intent to defraud, and have in such person's control, custody and possession, an analog, digital, and electronic image of an obligation of the United States, that is, a $100 FRN, in violation of Title 18, United States Code, Section 474(a);

(f)     to possess a plate made after and in the similitude of a plate used to print obligations of the United States, that is, $100 FRN, with intent to use such plate, and to suffer such plate to be used, in forging and counterfeiting such obligations of the United States, in violation of Title 18, United States Code, Section 474(a);

(g)     to possess with intent to sell and otherwise use, that is, counterfeited $100 FRN, made after the similitude of obligations issued under the authority of the United States, in violation of Title 18, United States Code, Section 474(a);

(h)     to possess an obligation made and executed, in whole and in part, after the similitude of any obligation issued under the authority of the United States, that is, a $100 FRN, with intent to sell and otherwise use the same, in violation of Title 18, United States Code, Section 474(a).

### The Objects of the Conspiracy

The objects of the conspiracy included enriching the co-conspirators through, among other things, the making, dealing, passing, uttering, sale, exchange, transfer, receipt and delivery of counterfeit United States currency.

18

## Ways, Manner and Means

Among the ways, manner and means by which the defendants and the co-conspirators accomplished the objects of the conspiracy included the following:

1.    It was part of the conspiracy that the co-conspirators traveled from the Eastern District of Virginia to New York with genuine U.S. currency to obtain counterfeit $100 FRN.

2.    It was further part of the conspiracy that the co-conspirators traveled from Georgia to the Eastern District of Virginia to obtain counterfeit $100 FRN.

3.    It was further part of the conspiracy that the co-conspirators traveled in interstate and foreign commerce to manufacture, produce, sell, obtain and utter $100 FRN in exchange for genuine U.S. currency.

4.    It was further part of the conspiracy that the co-conspirators obtained counterfeit $100 FRN with genuine U.S. currency and bought the counterfeit FRN at a percentage of the face value of the genuine U.S. currency, in amounts ranging from 20% to 50% on the dollar.

5.    It was further part of the conspiracy that the co-conspirators communicated with one another via cellphone, text messages and in person.

6.    It was further part of the conspiracy that the co-conspirators used code words and phrases to refer to counterfeit U.S. currency.

7.    It was further part of the conspiracy that the co-conspirators brought counterfeit U.S. currency into the United States and possessed and concealed counterfeit U.S. currency.

8.    It was further part of the conspiracy that the co-conspirators structured cash deposits of genuine U.S. currency, in amounts under $10,000, at domestic financial institutions to avoid currency reporting requirements and to facilitate the purchase of counterfeit U.S. currency.

9.    It was further part of the conspiracy that the co-conspirators withdrew genuine U.S.

currency at domestic financial institutions in the Eastern District of Virginia to obtain counterfeit $100 Federal Reserve Notes.

      10.     It was further part of the conspiracy that the co-conspirators used "Federal Express" and other means to transport genuine U.S. currency and counterfeit U.S. currency to one another.

      11.     It was further part of the conspiracy that the co-conspirators passed and uttered counterfeit U.S. currency at various retail stores along the eastern part of the United States, including stores in the Eastern District of Virginia.

      12.     It was further part of the conspiracy that the co-conspirators purchased pre-paid debit cards with genuine U.S. currency and then use counterfeit $100 FRN to purchase re-loadable cards in order to add value to the pre-paid debit cards.

Overt Acts

      1.     On or about March 22, 2014, in Bellmore, New York, BRATTIE GUERRA uttered a total of ten (10) counterfeit $100 FRN during two separate transactions at the same CVS pharmacy.

      2.     On or about March 23, 2014, in Bellmore, New York, BRATTIE GUERRA uttered ten (10) counterfeit $100 FRN at CVS pharmacy.

      3.     On or about March 23, 2014, in Wantagh, New York, BRATTIE GUERRA uttered ten (10) counterfeit $100 FRN at CVS pharmacy.

      4.     On or about March 23, 2014, in Rockville Centre, New York, RAMEL EPPS, BRATTIE GUERRA and a female co-conspirator from New York (UCC-4) uttered six (6) counterfeit $100 FRN, in two separate transactions, at the same CVS pharmacy.

      5.     On or about March 23, 2014, in Nassau County, New York, RAMEL EPPS and

20

BRATTIE GUERRA obtained counterfeit U.S. currency from TARELL LAVON JOHNSON and provided it to FREDERICK BARRETT.

      6.      On or about March 24, 2014, in Rockville Centre, New York, RAMEL EPPS possessed thirty (30) counterfeit $100 FRN and FREDERICK BARRETT possessed nineteen (19) counterfeit $100 FRN.

      (All in violation of Title 18, United States Code, Section 371).

FORFEITURE

A.      Any defendant convicted of the violation charged in Count 1 of this Indictment shall forfeit to the United States any interest the defendant acquired or maintained in violation of Title 18, United States Code, Section 1962; any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over any enterprise which such defendant established, operated, controlled, conducted, or participated in the conduct of, in violation of Section 1962; and any property constituting, or derived from, any proceeds such defendant obtained, directly or indirectly, in violation of Section 1962. Any defendant convicted of the violation charged in Count 2 of this Indictment shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to that violation.

This property includes, but is not limited to, the following:

1.      $16,000,000, representing proceeds the conspirators obtained, directly or indirectly, as a result of the violation charged in Count 1 of the Indictment, and for which amount all convicted conspirators shall be jointly and severally liable. This $16,000,000 includes, but is not limited to, the following assets:

      a.      All monies and other things of value in Bank of America Account #910203201, held in the name of ITZHAK LOZ, including but not limited to approximately $9,678.75 contained in the account on May 28, 2014;

      b.      All monies and other things of value in Bank of America Account #381037288938, held in the name of RONEN FAKIRO, including but not limited to approximately $3,076.17 contained in the account held on May 28, 2014;

      c.      All monies and other things of value in Bank of America Account ending in #8776 held in the names of ITZHAK LOZ and RONEN FAKIRO including but not limited to approximately $7,505.71 contained in the account held on May 28, 2014;

      d.      $50,421.00 in U.S. currency seized by law enforcement authorities

22

from the luggage of RONEN FAKIRO in Room #104 of the Lexington Hotel, in Jamaica, New York, on May 28, 2014;

e.  $44,940.17 in U.S. currency seized by law enforcement authorities from the luggage of ITZHAK LOZ in Room # 109 of the Lexington Hotel, in Jamaica, New York, on May 28, 2014; and

f.  $5,935.80 in U.S. currency seized by law enforcement authorities from the warehouse property known as Unit #18 at 620 Deer Road, in Cherry Hill, New Jersey, on May 28, 2014.

2.  The warehouse property known as Unit #18 at 620 Deer Road, in Cherry Hill, New Jersey held in the name of ITZHAK LOZ and RONEN FAKIRO;.

3.  The printing and office equipment and machinery seized by law enforcement authorities from Unit #18 at the warehouse property known as 620 Deer Road, in Cherry Hill, New Jersey, on May 28, 2014, including three Original Heidelberg Printing Machines, with serial numbers T-180-232-E; T-183-634-E; T-185-072-E; a Heidelberg Speedmaster Offset Press (#206185 2003); and a Ryobi offset press, Model #9995A.

B.  Any defendant convicted of the violation charged in Count 2 of this Indictment shall forfeit to the United States all articles, devices, and other things made, possessed, or used or intended to be used in the making of counterfeits of any coins or other obligations of the United States. This property includes, but is not limited to, the printing and office equipment and machinery described above.

C.  Substitute Assets: Any defendant convicted of either or both counts in this Indictment shall forfeit to the United States any other property, real or personal, up to the value of the property described above, if by any act or omission of such defendant, the property subject to forfeiture:

| a. | cannot be located upon the exercise of due diligence; |
| b. | has been transferred, sold to, or deposited with a third party; |
| c. | has been placed beyond the jurisdiction of the Court; |
| d. | has been substantially diminished in value; or |
| e. | has been commingled with other property which cannot be divided |

without difficulty.

The property subject to forfeiture as substitute assets includes, but is not limited to, the following:

1. $71,494.00 in U.S. currency seized by law enforcement authorities from the business premises of A.K. 47th Street Buyers, at 74 West 47th Street, in New York, New York, on May 28, 2014;

2. $47,950.00 in U.S. currency seized by law enforcement authorities from the residence of EDUARD BANGIYEV, at 110-37 69th Avenue, in Forest Hills, New York, on May 28, 2014;

3. $8,718.30 in U.S. currency seized by law enforcement authorities from the residence of ARKADIY BANGIYEV at 102-02 65th Road, in Rego Park or Flushing, New York, on May 28, 2014;

4. $12,020.00 in U.S. currency seized by law enforcement authorities from the residence of TARELL LAVON JOHNSON in Lynbrook, New York, on May 28, 2014;

5. one Smith and Wesson .45 caliber handgun, Model 1911, serial number JRJ8146 seized on May 28, 2014 in Lynbrook, New York;

6. $900.00 in U.S. currency seized by law enforcement authorities from the person of JOHNNY ELEGANTE LEE on June 1, 2014, in Ft. Lauderdale, Florida;

7. At least $4,824.00 in Account #805-960-6249 at PNC Bank, in the name of A.K. 47th Street Buyers;

8. At least $572,848.39 in Account #793-0048926 at TD Bank, in the name of ARKADIY BANGIYEV;

9. At least $2,420.86 in Account #793-0043760 at TD Bank, in the name of EDUARD BANGIYEV;

10.    At least $1,043.38 in Account #426-1239268 at TD Bank, in the names of ARKADIY BANGIYEV and Anna Bangiyev;

11.    At least $7,178.74 in Account #427-0124400 at TD Bank, in the name of M&A Star Realty LLC, a nominee name for EDUARD BANGIYEV;

12.    At least $7,371.71 in Account #792-9678949 at TD Bank, in the names of ARKADIY BANGIYEV and Illana Bangiyev;

13.    The real property and premises known as 110-37 69th Avenue, in Forest Hills, New York, held in the names of ARKADIY BANGIYEV, EDUARD BANGIYEV, Irina Alishareyva, and Ilana Bangiyeva;

14.    The real property and premises known as 112-44 68th Avenue, in Forest Hills, New York held in the names of ARKADIY BANGIYEV and Anna Bangiyev;

15.    The real property and premises known as 98-21 67th Avenue, in Flushing, New York, 11374 held by ARKADIY BANGIYEV in the names of Irina Alishayeva and Ilana Bangiyev;

16.    The real property and premises known as 98-23 67th Avenue, in Flushing, New York, 11374, held by ARKADIY BANGIYEV in the names of Irina Alishayeva and Ilana Bangiyev;

17.    The real property and premises known as 102-02 65th Road, Forest Hills, New York, 11374 held by ARKADIY BANGIYEV but in the names of Irina Alishayeva and Ilana Bangiyev;

18.    All shares of stock and propriety lease related to the residential cooperative apartment known as Unit 10N, in the premises known as 61-25 98th Street, in Rego Park, New York, held in the name of ARKADIY BANGIYEVA;

19.    The jewelry, coins, currency, and other business assets of A.K. 47th Street Buyers, located at 74 West 47th Street, in New York, New York;

20.    One 2011 black LR4 Range Rover automobile, bearing Vehicle Identification Number ("VIN") SALAK2D48BA557140, controlled by EDUARD BANGIYEV and registered to Irina Alishayeva of Forest Hills, New York;

21.    One 2012 black Land Rover automobile, bearing VIN: SALMP1E47CA389368, registered to EDUARD BANGIYEV of Henryville, Pennsylvania;

22.    One 2006 Bentley automobile, bearing VIN: SCBBR53W36C039767, registered to EDUARD BANGIYEV of Henryville, Pennsylvania; and

23. One 2013 Mini Cooper automobile, bearing VIN: WMWZC5C58DWP34212, held by JOHNNY ELEGANTE LEE, and registered in the name of Sharon McFarlane-Jones of Elmont, New York; and

24. One 2009 Infiniti automobile, bearing VIN: JNRAS18W19M156163, controlled by JOHNNY ELEGANTE LEE and registered in the name of SharonMcFarlane-Jones of Hempstead, New York.

(Pursuant to Title 18, United States Code, Sections 492, 981 and 1963; Title 21, United States Code, Section 853; and Title 28, United States Code, Section 2461(c).)

A TRUE BILL

FOREPERSON

DANA J. BOENTE
UNITED STATES ATTORNEY

*Kimberly R. Pedersen*
Kimberly R. Pedersen
Assistant United States Attorney
Gordon D. Kromberg
Assistant United States Attorney