**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

**----------------------------------------------X**

| | | |
|---|---|---|
| **UNITED STATES** | : | |
| | : | |
| **v.** | : | **Case: 1:14-cr-206** |
| | : | |
| **ITHZAK LOZ** | : | |
| | : | |

**----------------------------------------------X**

# MEMORANDUM ON BEHALF OF ITHZAK LOZ

# IN AID OF SENTENCING

**ATTORNEY FOR THE DEFENDANT**

Edsel Guydon (VA Bar No. 37021)
JORDAN GUYDON, LLP
10560 MAIN STREET (MOSBY TOWER)
FAIRFAX, VA 22030
PH: 703.865.8699
eguydon@jpcattorneys.com

William R. Martin (admitted *pro hac vice*)
Miles & Stockbridge, P.C.
1500 K Street, NW, Suite 800
Washington, D.C. 20005
202.465.8422
bmartin@milesstockbridge.com

## I. Introduction

This memorandum and accompanying exhibits are submitted to the Court to assist in the sentencing of Mr. Ithzak Loz. As the Court is aware, while Mr. Loz was attempting to reach a plea agreement with the Government, the co-defendants, Eduard and Arkadiy Bangiyev were offered and accepted plea agreements. On January 20, 2015, after Mr. Loz was advised by the Government that he would not receive a plea offer, he pled guilty to Count 1 of the Superseding Indictment charging him with a Racketeering Conspiracy in violation of 18 U.S.C. § 1962(d).[1] Although no plea agreement was reached with the Government, the Government agreed to dismiss Count 2 after Mr. Loz's plea. He also agreed to cooperate and according to representations made at the May 28, 2015 hearing, Mr. Loz has been cooperative. *See* May 28, 2015 Hearing at 143:5-148:7, attached at Ex. A.)

This memorandum and accompanying documentation are submitted to assist the Court in determining a fair and just sentence for Mr. Loz. The information contained herein will supplement the Presentence Investigation Report ("PSR") and provide the Court with a complete understanding of Mr. Loz, his offense behavior, and how this matter has impacted him and his family.

As discussed more fully below, Mr. Loz is a man devoted to his family. He has worked all of his life to provide for his family and encourages his adult children to be successful in their own endeavors. He understands and appreciates the U.S. criminal justice system and recognizes that he must be sentenced for the crime for which he has plead guilty. Nonetheless, he asks that the Court consider all of the information contained in this sentencing memorandum before determining a just sentence – not for this crime – but for the individual before you.

---

[1] During the May 28, 2015 hearing on loss amounts there was a discussion of Mr. Loz's cooperation. *See* May 28, 2015 Hearing at 83:5-85:4 and 143:5-148:7, attached at Ex. A.

It is our belief that upon considering all of the sentencing factors, and understanding the person standing before this Court, the Court will understand, and hopefully agree, that a less than guideline recommended sentence of incarceration is adequate to meet the goals of sentencing in this case. Therefore, we ask that the Court impose a sentence of between eight to ten years. We are hopeful that the Court will agree that a reduced sentence is sufficient but not greater than necessary to meet the goals of sentencing in this case.

## II. Personal and Professional Background

Mr. Loz is 48 years old, and is the youngest of three children. Mr. Loz had a rough childhood growing up in Asklon, Israel, to a lower-middle class family. Both of Mr. Loz's parents were Holocaust survivors in Nazi Germany. His father "successfully fled the genocide and joined the Soviet armed forces during World War II," while his mother "survived incarceration in Nazi concentration camps." PSR at ¶ 84. As a result of their background, Mr. Loz's parents struggled with emotional problems. *Id.*; *see* Letter from Nofar Loz attached at Ex. B; *see also* Letter from Slava Norani (Mr. Loz's sister) attached at Ex. C (describing their mother's mental and physical state). Mr. Loz's father passed away in 2010 and his mother passed away in 2014 while Mr. Loz was incarcerated in this case.

Mr. Loz graduated from military school in 1985 and went on to become an active member of the Israeli Defense Force where he was assigned to the Israeli Special Forces. *See* PSR at ¶¶ 94 and 98. After serving in the Special Forces, Mr. Loz remained in the Israeli military reserve for 15 years. *Id.* While in the reserves, Mr. Loz attended technical school and pursued a certificate in computer engineering. He was self-employed before serving as a technical adviser to larger companies through Baron Computers, a computer service company in Israel. *Id.* at ¶ 96. After Baron Computers, Mr. Loz moved on to become the Chief Operating

Officer of Marker Systems, an Israeli security surveillance and computer security software company. *Id.* at ¶ 95.

In 1987 Mr. Loz married his first wife and had three children, Nofar Loz, Yariv Loz, and Meital Loz. All three children have been deeply impacted by this situation and their father's choices but each spoke of a man who is an outstanding father and supporter of the family. For example, his son, Yariv stated that he wanted to follow in his father's footsteps by getting an education. He even joined the police force as his father did to help contribute to the community. Yariv further stated that at "every crossroads in my life, my dad was there to guide me to select the correct" path. *See* Letter from Yariv Loz attached as Ex. D. Yariv went on to discuss the fact that his father "is a man that devoted [h]is life for" the family. *Id.*

Mr. Loz does not often speak of his own generosity towards others. However, his children wanted to make the Court aware of the generosity that he possess. Mr. Loz's oldest child, Nofar Loz spoke of instances in which her father contributed to her school and education. On one occasion when Nofar was sixteen years old her class planned a trip to Poland. Mr. Loz discovered that some of the students in Nofar's class could not afford to travel to Poland. Mr. Loz assisted the school to assist in paying for the plane tickets of those students. *See* Letter from Nofar Loz, attached at Ex. B. Additionally, Nofar discussed her path to becoming a lawyer. Her dad agreed to assist with her law school tuition as long as she promised that when she graduated she would "help those in need." *Id.* Nofar is now a practicing attorney in Israeli and devotes some of her law practice to handling pro-bono cases because of the promise that she made to her father. *Id.*

Mr. Loz's youngest daughter, Meital, also spoke of his dedication to his children even after the divorce from her mother. Despite being divorced, Mr. Loz never missed visitation

times with his children. Meital states that she saw her father as someone who always "help[ed] people, [being] a very kind person, [a] generous person, [and] full of compassion." *See* Letter from Meital Loz attached at Ex. E.

After his divorce, Mr. Loz eventually married Dina Loz in June 2001. They remain happily married today and have a set of ten year old twins, Adir and Tomer. Adir has suffered and continues to suffer from autism and hydrocephalus, which has required him to undergo brain surgery and various other medical treatments. PSR ¶ 86; *see also* Letter from Dina Loz (Mr. Loz's wife) attached at Ex. F. Adir is completely dependent on others to care for him. Prior to his arrest, Mr. Loz was the parent primarily responsible for Adir's daily care. Mr. Loz's other children speak of how Mr. Loz seems to be one of the only people that can communicate with Adir (or that Adir understands).[2] Currently, Mrs. Loz is attempting to care for Adir on her own, and she is struggling to deal with some of his violent outbursts due to his medical condition. *See* PSR at ¶ 86. Adir's ten year old twin brother Tomer Loz submitted a letter that discusses how he also misses his father and how Mr. Loz comforts him when his brother, Adir has an outburst. *See* Letter from Tomer Loz attached at Ex. G.

Mr. Loz's mother and father-in-law also submitted letters of support describing Mr. Loz as a loyal person and "great family member." *See* Letter from Ina Yasinover attached at Ex. H; *see also* Letter from Leonid Yasinorver attached at Ex. I.

As the Court may be aware, Mr. Loz's family resides in Israel and are unable to travel to the United States for the sentencing. Also, Mr. Loz did not want his family to come and see him incarcerated and going through these proceedings. Therefore, at the request of Mr. Loz the family has remained in Israel. However, they wanted to let the court know how they feel about their father and husband and did so in a family video that is attached at Ex. J.

[2] Please see attached videos of Adir at Ex. J. (To be hand delivered to Chambers and the Government)

## III. Background of the Offense

On January 20, 2015, Mr. Loz pled guilty to Count One of the Superseding Indictment charging him with a Racketeering Conspiracy in violation of 18 U.S.C. § 1962(d). Additionally, Mr. Loz entered into a cooperation agreement with the Government for which any truthful statements made by Mr. Loz in debriefing sessions with the Government would not be used against him in sentencing. Mr. Loz raised several objections to the PSR upon discovering that the Memoranda of Interviews from his debriefing sessions were disclosed to the PSR writer and were subsequently used by the writer in assessing a recommended sentencing/guideline range. Below you will find a brief description of each to support our recommendation of a lower guideline range.

### A. Loss Amount

The guideline range calculated by the presentence writer attributes a loss amount to Mr. Loz of between $50,000,000 to $100,000,000. The presentence writer had no independent evidence, conducted no independent investigation or interviews of people with firsthand knowledge, but rather was provided access to Mr. Loz's debriefing sessions where Mr. Loz, as part of his cooperation agreement submitted very specific information now being used against him in the PSR. Defense counsel objected to that loss amount because we did not believe that the evidence the Government possessed could support the loss amount they alleged. However, because Mr. Loz has been and still is cooperating with the Government, Mr. Loz withdrew his objection to the loss amount, believing the Government had sufficient admissible evident to prove between $50,000,000 to $100,000,000.[3] However, the Government does not have

[3] In Mr. Loz's Notice of Withdraw, Mr. Loz preserved his right to object to the Government's use of information he provided during his debrief sessions. We raise this issue here because we believe that the only source of the information pertaining to loss amount comes from Mr. Loz's debrief sessions, and therefore should not be used against him at sentencing. *See also*, Sentencing Guidelines Rule 1B1.8.

sufficient admissible evidence to prove by a preponderance of the evidence that this is the loss amount and as a matter of law there is not sufficient evidence to permit this Court to find the Government has met its burden of proof on the loss amount. As noted in the objections listed in the PSR, Mr. Loz believes that any truthful information that he provided during debrief and cooperation sessions should not be used against him for purposes of sentencing as agreed to by the Government. Therefore, the evidence that the presentence writer gleaned from Mr. Loz's debrief memoranda in the Government's file should not have been used to calculate a loss amount. As noted in Mr. Loz's Notice of Withdraw of objection to loss amount, we would ask this Court to compartmentalize Mr. Loz's statements and not use them against him in determining a loss amount pursuant to his agreement with the Government.

Lastly, it should also be noted that the PSR states that "[s]ince 1999, more than $86,000,000 in counterfeit currency linked to the instant conspiracy has been inventoried. Accordingly, the defendant has been held accountable for losses of more than $50,000,000, but less than $100,000,000 for purposes of guidelines calculations." PSR at ¶ 47. However, despite some of the circular numbers being linked to the various counterfeit notes, the Government is not able to argue that Mr. Loz participated in the printing or manufacture of all of the notes that were seized. (*See* May 28, 2015 Hearing Loss Transcript at 54:10-55:8, attached at Ex. A.) Thus, demonstrating more of a reason as to why the loss amount should be reduced to somewhere in the neighborhood of co-defendants, Eduard and Arkadiy Bangiyev, an amount the Government can prove by a preponderance of the evidence. Furthermore, and as a sign of Mr. Loz's acceptance and cooperation, he has notified the Government that he will consent to a forfeiture of between $7,000,000 and $20,000,000.

**B. Role in the Offense**

Mr. Loz objects to a four level enhancement for the characterization that he was a "orchestrator and leader of the enterprise." PSR at ¶ 49. While Mr. Loz does acknowledge that he played a role in this conspiracy, it should not be considered an aggravating role for purposes of sentencing. Additionally, contrary to the presentence writer's statements there is no evidence that Mr. Loz received the largest portion of the proceeds among the members of the conspiracy.

As will be discussed at length below, given Mr. Loz's background, commitment and dedication to his family, forced separation from his family in Israel, cooperation with the government, and the high penalty that Mr. Loz is currently facing and has faced, sentencing Mr. Loz to a period of incarceration for longer than eight to ten years is contrary to the goals of sentencing.

**IV. Sentencing Considerations**

As the Supreme Court has long recognized, "it has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). With the United States Sentencing Guidelines now rendered "advisory only," a district court has substantial discretion in fashioning a sentence appropriate to the individual circumstances of the defendant and the unique facts of the offense. *See Kimbrough v. United States*, 128 S. Ct. 558, 564 (2007). While the Court must consider the guideline range in a case, "the Guidelines are not the only consideration." *Gail v. United States*, 128 S. Ct. 586, 597 (2007); *see also Kimbrough*, 128 S. Ct. at 564 ("the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence").

In *United States v. Booker*, the Supreme Court determined that district courts must consider all of the sentencing factors under 18 U.S.C. Section 3553(a)(1)-(7) without giving mandatory weight to the sentencing guidelines. *See* 53 U.S. 220 (2005). Indeed as mandated by Congress, the fundamental principle of sentencing is that a court "*shall impose a sentence sufficient, but not greater than necessary*" to meet specified sentencing goals. 18 U.S.C. § 3553(a)(emphasis added). Title 18 U.S.C. Section 3553(a)(2) states that such purposes of sentencing are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2)(A)-(D).

In determining the minimally sufficient sentence, Section 3553(a) directs sentencing courts to consider the following factors:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant as described in § 3553(a)(1);
>
> (2) The need for the sentence imposed as described in § 3553(a)(2);
>
> (3) The kinds of sentences available as described in § 3553(a)(3)
>
> (4) The sentencing guideline range and any pertinent policy statements issued by the Sentencing Commission as described in § 3553(a)(4) and (a)(5);
>
> (5) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct as described in § 3553(a)(6); and
>
> (6) The need to provide restitution to any victim of the offense as described in § 3553(a)(7).

18 U.S.C. § 3553(a)

In addition, a district court "may not presume that the guidelines range is reasonable," and instead "must make an individualized assessment based on the facts presented." *Gall*, 128 S. Ct. at 597. Moreover, the Supreme Court has specifically ruled that, in balancing the Section 3553(a) factors, a judge may determine that "in the particular case, a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing." *Kimbrough*, 128 S. Ct. at 564; *see also Rita v. United States*, 127 S. Ct. 2456, 2465 (2007) (a district court may consider arguments that "the Guidelines sentence itself fails properly to reflect § 3553(a) considerations, or 'that' the case warrants a different sentence regardless"). A district court may now vary from the applicable guideline range "based solely on policy consideration, including disagreements with the Guidelines." *Kimbrough*, 128 S. Ct. at 570. Other statutory sections also give the district court direction in sentencing. Under 18 U.S.C. Section 3582, imposition of a term of imprisonment is subject to the following limitation: "[t]he court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in 3553(a) to the extent they are applicable, recognizing that imprisonment is ***not*** an appropriate means of promoting correction and rehabilitation." 18 U.S.C. §3582 (emphasis added). In sum, in every case, a sentencing court must now consider ***all*** of the Section 3553(a) factors, not just the guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing.

After a review of the Section 3553 factors below, we urge the Court to determine that a sentence of between eight and ten years incarceration is the appropriate resolution in this case.

## V. Application of 18 U.S.C. § 3553(a) Factors

### A. 18 U.S.C. § 3553(a)(1)

#### 1. History and Circumstances of the Defendant

The history and circumstances of the defendant are to be considered under 18 U.S.C. § 3553(a)(1). As described in the Personal and Professional Background section of this memorandum, Mr. Loz maintains close relationships with his family, and is especially helpful in the care of his son Adir. The offense charged displays a different side of Mr. Loz, but in no way defines the man that he truly is. The true picture of Mr. Loz as outlined above and in the letters presented to this Court demonstrate that, Mr. Loz has always been a caring and devoted husband, father, and family man, who has tried to improve and enrich the lives of his children. As noted in the PSR and letters and videos from his wife and children, Mr. Loz has clearly demonstrated his acceptance of responsibility and recognizes the damage that he has caused to the United States Government and the pain that this continues to cause his family.

### B. 18 U.S.C. § 3553(a)(2): The Need for the Sentence Imposed to Promote Certain Statutory Objectives

Section 3553(a)(2) directs the Court, when assessing the purposes of criminal punishment, to ensure that the sentence reflects not only the "seriousness of the offense," but "just punishment." 18 U.S.C. § 3553(a)(2)(!). In addition, in fashioning an appropriate sentence, the Court should consider whether the sentence is appropriate to "afford adequate deterrence" and to "protect the public from further crimes of the defendant." *Id.* at §§ 3553(a)(2)(B)-(C).

#### 1. To Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment for the Offense

The goal of sentencing is to impose a sentence that is sufficient but not greater than necessary. As renowned criminologist, Norval Morris, has consistently argued that when determining punishment, "the least restrictive (punitive) sentence necessary to achieve defined social purposes should be imposed." Morris Norval, *The Future of Imprisonment*, Chicago: University of Chicago Press, p. 59 (1974).

Mr. Loz must be punished for his actions. However, a lengthy prison sentence is not necessary to meet the goals of sentencing, particularly in this case where Mr. Loz fully appreciates the seriousness of his offense, which has been demonstrated by his acceptance of responsibility and cooperation with the government. Mr. Loz has suffered punishment since his arrest and plea by missing out on time with his family while being incarcerated for the last year and a half, and facing additional incarceration and time away from his family that resides in Israel. There is no doubt that remaining incarcerated for a long period of time in the United States, Mr. Loz will continue to be punished for the crime that he committed, therefore making an unduly long prison sentence unnecessary in this case.

**2. To Afford Adequate Deterrence to Criminal Conduct**

Title 18 U.S.C. Section 3553(a)(2)(B)'s directive that the sentence imposed afford adequate deterrence to criminal conduct does not require a lengthy term of imprisonment. The fact that Mr. Loz has been investigated, prosecuted and pled guilty, and incarcerated for the last year and a half, coupled with the fact that he will have to serve an additional period of incarceration in the United States, where he has no family or friends, is more than enough to provide deterrence to other individuals from engaging in this type of conduct.

**3. To Protect the Public from Further Crimes of the Defendant**

In the letters and videos submitted to the Court it is clear that Mr. Loz is a man that is respected by his family who look to him for guidance and support. Through this investigation, Mr. Loz's actions have been scrutinized, thus making it highly unlikely that Mr. Loz will ever reoffend. Therefore, a long term of incarceration is not necessary to protect the public from Mr. Loz.

**4. To Provide the Defendant with Necessary Medical Treatment**

18 U.S.C. Section 3553(2)(D) states that one of the factors to be considered when determining an appropriate sentence is the defendant's need for medical care in the most effective manner. Mr. Loz was diagnosed with Type II, insulin-dependent Diabetes in 2001. But because of his gastric sleeve surgery in 2013, his diabetes has been mitigated and Mr. Loz is no longer insulin dependent, however, his immune system appears to be compromised as he has incurred infections while incarcerated, one of which resulted in a hospital stay of several days. Mr. Loz also battles with gout, which is frequently very painful and for which he takes various medication.

**C. 18 U.S.C. §3553(a)(6): The Need to Avoid Unwarranted Disparities**

Title 18 U.S.C. Section 3553(a)(6) directs that the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" be considered when imposing sentence on Mr. Loz. We would ask that the Court keep Mr. Loz's role in the conspiracy as a printer of counterfeit currency and not a leader or organizer of this conspiracy, in mind when fashioning a sentence for him.

## VI. Conclusion

Outside of the conduct which brings him before this Court, Mr. Loz has demonstrated that he is a hard-working man who is incredibly supportive of his family. Mr. Loz has accepted

full responsibility for his wrongdoing in this case, and profoundly regrets his actions. In the end, however, the misconduct that occurred does not erase the family man that will be standing before you at sentencing. Nor does it erase the positive ways in which he has impacted his family. For these reasons, it is respectfully submitted that a sentence outside the guideline range be imposed and that Ithzak Loz be sentenced to eight to ten years followed by a period of supervised release, would meet the goals of sentencing and fully serve the interests of justice in this case.

Dated: September 8, 2015

Respectfully Submitted

ITHZAK LOZ
By Counsel

/s/

Edsel Guydon (VA Bar No. 37021)
JORDAN GUYDON, LLP
10560 MAIN STREET (MOSBY TOWER)
FAIRFAX, VA 22030
PH: 703.865.8699
eguydon@jpcattorneys.com

William R. Martin (admitted *pro hac vice*)
Miles & Stockbridge, P.C.
1500 K Street, NW, Suite 800
Washington, D.C. 20005
202.465.8422
bmartin@milesstockbridge.com
*Attorney for Defendant Ithzak Loz*

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of September 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel or record.

/s/

Edsel Guydon (VA Bar No. 37021)
JORDAN GUYDON, LLP
10560 MAIN STREET (MOSBY TOWER)
FAIRFAX, VA 22030
PH: 703.865.8699
eguydon@jpcattorneys.com
*Attorney for Defendant Ithzak Loz*