IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:14cr206-001 |
| | ) | |
| ITZHAK LOZ, | ) | |
| | ) | |
| Defendant. | ) | |

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR A PRELIMINARY ORDER OF FORFEITURE AGAINST DEFENDANT ITZHAK LOZ

On April 20, 2015, we moved the Court for the entry of a preliminary order of forfeiture against Itzhak Loz and his co-defendants. Docket #601. This memo is submitted to identify the particular basis for forfeitures to be imposed against Itzhak Loz only.[1]

Background and Procedural History

From 2004 until about June 1, 2014, a RICO enterprise manufactured tens of millions of dollars' worth of counterfeit U.S. currency that was distributed in Virginia and elsewhere. A lengthy investigation by the United States Secret Service ("USSS") identified the defendant as a member of the enterprise who invested genuine U.S. currency to facilitate the production of counterfeit U.S. currency, distributed the counterfeit U.S. currency, and coordinated the movement of monies derived from the sale of the counterfeit monies[2].

[1]We adopt and incorporate the allegations and facts set forth in that motion and supporting exhibits, as well as the facts set forth in our memorandum and supporting exhibits with respect to the amount of counterfeit currency for which the defendant should be held responsible for purposes of calculations of the Sentencing Guidelines (Docket #632).

[2]The investigation included approximately nine months of court authorized wiretaps of phones used by co-conspirators during which the defendant was intercepted.

On May 28, 2014, the USSS arrested most of the defendants and executed search warrants at various locations including a warehouse in Cherry Hill, New Jersey and a storage unit in Rockville Centre, New York. On August 7, 2014, a grand jury indicted the defendant and others with participating in a RICO conspiracy and conspiracy to commit counterfeiting offenses. The superseding indictment notified the defendant of the government's intention to seek extensive forfeitures.

On January 20, 2015, the defendant pled guilty to participating in a RICO conspiracy, as charged in Count One of the superseding indictment. The defendant entered his guilty plea without a plea agreement. Accordingly, the forfeitures attendant to that guilty plea must now be resolved by the Court.

## Argument

As noted in our initial memorandum (Docket #601), a defendant convicted of a RICO offense shall forfeit not only proceeds and interests obtained by the defendant from any racketeering activity, but all of the defendant's interests in the RICO enterprise, both tainted and untainted by racketeering activity. 18 U.S.C. §§ 1963(a)(1), (2) & (3). As the Fourth Circuit observed in *United States v. Cherry*, "the RICO statute is by far the most far reaching forfeiture provision, sweeping far more broadly than the substantive RICO offense itself." 330 F.3d 658, 669 n.18 (4th Cir. 2003) (internal quotations omitted).

Forfeiture is a mandatory part of a sentence for a RICO violation. *Alexander v. United States*, 509 U.S. 544, 562 (1993); *United States v. Blackman*, 746 F.3d. 137 (4th Cir. 2014). Because forfeiture is part of punishment, the standard of proof for RICO forfeiture is preponderance of evidence. *United States v. Najjar*, 300 F.3d 466 (4th Cir. 2002).

In the proposed Preliminary Order of Forfeiture filed with this memo, we list specific property and a money judgment to be forfeited, and set forth the applicable provisions regarding seizure of the property, post-conviction discovery, and the commencement of the ancillary proceeding in accordance with Rule 32.2(b)(3) and 1963(e)-(l). Should the Court determine that such properties are *not* subject to forfeiture pursuant to the provisions of 18 U.S.C. § 1963(a), then we request forfeiture of the property as substitute assets, pursuant to 18 U.S.C. § 1963(m). As noted above, in this case, the defendant agreed in his plea agreement to the forfeiture of the property listed in the indictment as substitute property if it was not forfeitable otherwise.

I. Properties Primarily Subject to Forfeiture as Involved in the RICO Enterprise

Pursuant to 18 U.S.C. §§ 1963(a)(1) and (a)(2), the following properties are subject to forfeiture to the United States as property the defendant acquired or maintained in violation of 18 U.S.C. § 1962, or as an (a) interest in; (b) security of; (c) claim against, or (d) property or contractual right of any kind affording a source of influence over the defendant's racketeering enterprise:

a. The real property and premises with appurtenances known Unit 18 in the warehouse property (condominium) located at 620 Deer Road, in Cherry Hill, New Jersey;

b. One Heidelberg Speedmaster Offset Press MN, SN: SM52-2, 206185 2003 with miscellaneous components on wood pallet, seized on May 28, 2014, from Unit No. 18 at 620 Deer Road, Cherry Hill, New Jersey;

c. One Ryobi (A.B. Dick) Offset Press, MN: 9995Z, seized on May 28, 2014, from Unit No. 18 at 620 Deer Road, Cherry Hill, New Jersey;

d. One Challenge Paper Cutter, SN: 95523E, seized on May 28, 2014, from Unit No. 18 at 620 Deer Road, Cherry Hill, New Jersey; and

e. Miscellaneous printing and office equipment seized on May 28, 2014, from Unit No. 18 at 620 Deer Road, Cherry Hill, New Jersey (with an estimated value of approximately $26,490).

Pursuant to 18 U.S.C. § 1963(a)(2), any property or interest of a defendant that is not directly part of an enterprise, but allows the defendant to exert control or influence over the enterprise, is subject to forfeiture. Instrumentalities used in the offense, such as buildings or vehicles, are forfeited under the same authority. *United States v. West*, 877 F.2d 281, 292 (4th Cir. 1989) (houses used for storage and sales of drugs afforded defendant a source of influence over enterprise). As a result, the warehouse at 620 Deer Road, as well as the equipment found inside it, are forfeitable on the grounds that they constituted an interest in the racketeering enterprise, or afforded a source of influence over it. .

f. $5,935.80 U.S. currency seized on May 28, 2014, from Unit No. l8 at 620 Deer Road, Cherry Hill, New Jersey

The $5,935.80 in U.S. currency seized from inside the warehouse on May 28, 2014, is forfeitable as an interest in the racketeering enterprise. In the alternative, it is forfeitable as proceeds of the racketeering enterprise, or as a substitute asset.

II. Proceeds or Interests the Defendant Acquired or <u>Maintained through his Participation in the Conspiracy</u>

Each defendant convicted of a RICO conspiracy charge is jointly and severally liable for the forfeiture of the entire amount of the proceeds generated by the conspiracy that was reasonably foreseeable to him. *United States v. McHan*, 101 F.3d 1027, 1043 (4th Cir. 1996). The Government is not required to show that the defendants shared the proceeds of the offense amount themselves, nor to establish how much was distributed to a particular defendant. *United States v. Bollin*, 264 F.3d 391, 419 (4th Cir. 2001). As explained below, the conspirators

in this case jointly obtained at least $70,000,000, and the generation of at least that amount was reasonably foreseeable to Loz.

The USSS collects, records and classifies every single piece of counterfeit United States currency seized (i.e., found at the point of production or seized by law enforcement before it is sent to or received by financial institutions) and passed (i.e., found in circulation or received at a financial institution) in the United States based on an examination of the denomination, security features and printing processes used on the front plate, back plate and Treasury seal. This classification system is known as the "circular system." Counterfeit notes have the same circular number if the same printing process was used and the same characteristics are present on the front plate, back plate and Treasury Seal. See Declaration of SA Gaab (Docket #601-1) ¶¶ 3-5; Affidavit of Heidi A. Burghardt (Docket #632-3) and Forensic Analysis by CS Dellibovi, (Docket #632-1).

USSS CS Dellibovi examined, compared and classified the very high quality and most prolific circular notes seized and passed in this case: C-22272 ($100 note); C-23201 ($50 note); and C-23332 ($100). Forensic Analysis by CS Dellibovi (Docket #632-1).

The USSS recovered two computers belonging to Loz from the New Jersey warehouse which contained over 3,000 digital images of United States currency and its security features, including the front plate, back plate, Treasury seal, watermark portraits, serial numbers, security thread and blue 3-D ribbon. CS Dellibovi reviewed these images and determined that they were digital images of 12 known circular notes, including C-22272; C-23201 and C-23332, the most prolific counterfeit notes identified by the USSS in this case. Declaration of SA Gaab (Docket #601-1), ¶ 60.

CS Dellibovi concluded that the common defect present in C-22272 ($100 note); C-23201 ($50 note); and C-23332 ($100), as well as the offset lithographic printing plates, plastic transparencies and computer files seized from Loz's computers at the warehouse was the Treasury Seal. Forensic Analysis by CS Dellibovi, Attachment A (Docket #632-1), pp. 37-39. The Treasury Seal on the counterfeit $100 that Johnny Lee sold in 2004 was the same as the one on the counterfeit $50 that Arkaidy sold to Devon Bost in 2007, which was the same as the counterfeit $100 that the USSS found in Loz's New York storage unit and the New Jersey warehouse in 2014. Forensic Analysis by CS Dellibovi (Docket #632-3, pp. 37-38).

According to the USSS data, the amount of counterfeit $50 and $100 bills passed and seized in the United States from fiscal year 2004 through April 20, 2015, that are associated with the particular notes in this case - - as well as the digital images from Loz's computers and the printing plates and transparencies seized from the warehouse - - was $70,474,250. *See* Affidavit of Heidi A. Burghardt (Docket #632-3), chart at p. 1.

Among the particular assets that are subject to forfeiture particularly as proceeds of the racketeering conspiracy are the following:

A. Approximately $9,678.75 in an account with a number <u>Ending in 3201, at Bank of America, held in the name of Itzhak Loz</u>

The defendant made millions of dollars in genuine currency from the sale of counterfeit currency to others, and had no legitimate income. Loz received huge sums of cash from Eduard and Arkadiy Bangiyev to finance the production of counterfeit currency. For example, on January 24, 2014, between 10:47 a.m. and 12:13 p.m., Loz and Fakiro deposited approximately $28,000 in cash into accounts ending in 3201, 8938 and 8776. On January 24, 2014, $9,500 cash was deposited into this account. There is a preponderance of evidence, therefore, that the contents of the account with an account number ending in 3201, at Bank of America, and held in

the name of Itzhak Loz, is forfeitable as the proceeds of the RICO conspiracy or as a substitute asset.

B. Approximately $7,505.71 in an account with a number ending in 8776, at Bank of America, held in the Names of Itzhak Loz and Ronen Fakiro

The defendant made millions of dollars in genuine currency from the sale of counterfeit currency to others and had no legitimate income. Ronen Fakiro was his associate in the RICO enterprise and had virtually no legitimate income but Fakiro financed the expenses of the operation, including airfare, lodging and rental cars. On January 24, 2014, $9,000 cash was also deposited into this account within minutes of the $9,500 deposit into Loz's account ending in 3201. There is a preponderance of evidence, therefore, that the contents of the account with an account number ending in 8776, at Bank of America, and held in the names of Itzhak Loz and Ronen Fakiro, is forfeitable as the proceeds of the RICO conspiracy. In the alternative, it is forfeitable as a substitute asset.

C. $44,940 in U.S. Currency Seized on May 28, 2014, From the Luggage of Itzhak Loz at the Lexington Hotel

As noted above, the defendant made millions of dollars in genuine currency from the sale of counterfeit currency to others and had no legitimate income. Loz and Fakiro opened and used joint bank accounts for their criminal activity and structured cash deposits into them to avoid bank reporting requirements. Eduard Bangiyev said he gave Loz a $100,000 down payment in April – one month before their arrest – to pay for the counterfeit Loz delivered to him on May 27, 2014. Eduard MOI[3,] April 9, 2015. Fakiro was arrested in possession of $50,421. There is a preponderance of evidence, therefore, that $44,940 in U.S. currency seized from Loz's luggage on

[3]All MOIs referenced in this pleading have been provided in discovery and will be filed as attachments under seal.

May 28, 2014, at the Lexington Hotel in Jamaica, New York, is forfeitable as the proceeds of the RICO conspiracy. In the alternative, it is forfeitable as a substitute asset.

D. One Breitling Stainless Steel Chronograph Bracelet Watch
Seized on May 28, 2014, from Itzhak Loz at the Lexington Hotel

As noted above, the defendant made millions of dollars in genuine currency from the sale of counterfeit currency to others and had no legitimate income. There is a preponderance of evidence, therefore, that the Breitling Stainless Steel Chronograph Bracelet Watch seized from him on May 28, 2014, at the Lexington Hotel in Jamaica, New York, is forfeitable as the proceeds of the RICO conspiracy. In the alternative, it is forfeitable as a substitute asset.

E. Approximately $1,000,000 Seized from Marfin Bank in Romania

We understand that the Government of Romania has seized approximately $1,000,000 from an account controlled by the defendant at the Marfin Bank Romania S.A. in Bucharest, Romania. Loz represents that the money was obtained from a family member and is not derived from the racketeering conspiracy[4]. We lack all of the records to dispute the source of the funds, and we do not know whether the United States ever will be able to obtain custody of those funds from the Government of Romania. In any event, however, the funds now held in an account at Marfin Bank Romania, S.A. should be forfeited at least as a substitute asset.

III. The Court Should Impose a Money Judgment in the Amount of $50,000,000

Pursuant to Rule 32.2(b) of the Federal Rules of Criminal Procedure and 18 U.S.C. § 1963(a), the United States seeks a money judgment against Loz in the amount of $50,000,000,

---

[4]Previously, Loz stated that an unindicted co-conspirator and a friend wired him $1,000,000 to his personal bank account, which he then wired that money to the business account of a casino in Romania. Loz stated that he was responsible for handling the business account of the casino. Loz stated that Fakiro initially gave him the money to "invest" in the casino, which Fakiro wired into Loz's personal account at Cyprus Bank, later known as Marfin Bank. Loz MOI, February 12, 2015.

minus the value of the items described above that are forfeitable *only* as the proceeds of his offense. As noted in our initial memorandum, a defendant convicted of a RICO offense shall forfeit a money judgment in the amount of the proceeds of the RICO offense, regardless of whether he still possesses those proceeds.

Each defendant convicted of a RICO conspiracy charge is jointly and severally liable for the forfeiture of the entire amount of the proceeds generated by the conspiracy that was reasonably foreseeable to him. *United States v. McHan*, 101 F.3d 1027, 1043 (4th Cir. 1996). The Government is not required to show that the defendants shared the proceeds of the offense amount themselves, nor to establish how much was distributed to a particular defendant. *United States v. Bollin*, 264 F.3d 391, 419 (4th Cir. 2001). As explained herein, the conspirators in this case jointly obtained at least $70,000,000, and the generation of at least that amount was reasonably foreseeable to Loz.

A money judgment is a personal judgment that requires a defendant to pay the total amount derived from criminal activity "regardless of whether the specific dollars received from that activity are still in his possession." *United States v. Amend*, 791 F.2d 1120, 1127 (4th Cir. 1986). *See U.S. v. Robilotto*, 828 F.2d 940, 949 (2d Cir. 1987) (court may enter a money judgment for the amount of RICO proceeds regardless of whether defendant retained them). Substitute assets may be forfeited to satisfy a money judgment. *Alamoudi*, 452 F.3d 310 (4th Cir. 2006).

In its calculation of the sentencing guideline applicable to Loz, the defendant withdrew his objection to the finding of the Probation Officer that the amount of counterfeit currency manufactured and distributed pursuant to the conspiracy and reasonably foreseeable to him was between $50,000,000 and $100,000,000. Docket #635. As a result, the money judgment entered

against him should be at least $50,000,000. The final money judgment amount, however, must be reduced to provide credit for the forfeiture of particular assets, detailed above, that are finally forfeited solely as traceable to proceeds of the offense of conviction. The proposed order filed with this pleading provides for such a reduction.

Conclusion

For the reasons expressed below as well as the reasons set forth in our initial motion, we request the Court to enter a Preliminary Order of Forfeiture.

Respectfully submitted,

Dana J. Boente
United States Attorney

/s/
Kimberly R. Pedersen
Assistant United States Attorney
Attorney for the United States of America
United States Attorney's Building
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: 703-299-3843
Fax: 703-299-3981
Email Address: kimberly.riley.pedersen@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of September 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all attorneys of record.

/s/
Kimberly R. Pedersen
Assistant United States Attorney
Attorneys for the United States of America
United States Attorney's Building
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: 703-299-3843
Fax: 703-299-3981
Email Address: kimberly.riley.pedersen@usdoj.gov